UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE H. BAILEY,

           Plaintiff,

v.

OAKWOOD HEALTHCARE, INC.,
*d/b/a* OAKWOOD HOSPITAL
& MEDICAL CENTER,

           Defendant.
_____/

Case No. 15-11799

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE ATTORNEY-CLIENT PRIVILEGED COMMUNICATION

### I. INTRODUCTION

This action arises from Plaintiff Michelle H. Bailey's claims that her employment with Defendant Oakwood Healthcare, Inc. was terminated for both discriminatory and retaliatory reasons in violation of various federal and state civil rights laws.

On September 2, 2016, Defendant filed its Amended Motion for Summary Judgment. (ECF No. 38.) Plaintiff filed her Response on October 14, 2016. (ECF No. 41.) Attached to the Response as Exhibit A were two pages of handwritten notes that David Squire (a Director of Human Resources employed by Defendant) had taken during a conversation that he had with Patrice Baker (Defendant's in-house counsel) 10 days before the March 20, 2014 meeting at which Plaintiff's employment was terminated. Defendant filed its Reply on November 11, 2016. (ECF No. 49.) On the same date, Defendant filed a Motion to Strike Attorney/Client Privileged Communication. (ECF No. 48.)

1

That Motion to Strike, which seeks to exclude Exhibit A as inadmissible based on the attorney-client privilege, is now before the Court. For the reasons stated below, the Court will GRANT Defendant's Motion.

## II.  ANALYSIS

The governing Sixth Circuit precedent provides as follows:

> Questions of privilege are to be determined by federal common law in federal question cases. Fed. R. Evid. 501. The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998).

Notes on a privileged conversation that reflect the substance of that conversation can amount to "communications" for these purposes, since the term "can be defined as 'any expression through which a privileged person . . . undertakes to convey information to another privileged person and any document or other record revealing such an expression.'" *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 140 (E.D. Mich. 2009) (quoting Restatement (Third) of Law Governing Lawyers § 69). Additionally, the requirement that the communication be "by the client" is not necessarily a literal one: "[a]n attorney's communications to a client may also be protected by the privilege, to the extent that they are based on or contain confidential information provided by the client, or legal advice or opinions of the attorney." *Schenet v. Anderson*, 678 F. Supp. 1280, 1281 (E.D. Mich. 1988). Overall, "[t]he burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

Squire, in an Affidavit attached to Defendant's Reply in support of its Motion, avers that the notes were taken during a conversation with Baker that was held in order to "address the underlying facts as to Michelle Bailey, actions taken with similarly situated persons, the possible claims, associated legal risks, and possible available alternatives." (ECF No. 53, Def.'s Reply, Ex. B, Affidavit of David Squire at ¶ 4.) Defendant argues that because the notes were produced inadvertently in discovery, and as they contain "the substance of a conversation that . . . Squire had with legal counsel prior to the termination of Plaintiff," they are privileged and therefore inadmissible for the purpose. (ECF No. 48 at 4.)

Plaintiff makes three distinct arguments in her Response: that Defendant has failed to show that the notes are privileged, that any privilege which did exist was waived by Defendant's disclosure of the notes, and that the crime/fraud exception should negate any finding that the notes are privileged. These arguments are considered in turn below.

### A. Has Defendant met its burden of showing that the notes were privileged?

Plaintiff argues that Defendant has failed to establish that the notes were the product of seeking legal advice, characterizing them instead as business advice, and suggesting that "Baker was operating more as a human resources consultant than as an attorney." (ECF No. 51 at 10.) In other words, Plaintiff essentially challenges Defendant's ability to meet the first two elements of the attorney-client privilege test articulated above: that the communication was made in the context of legal advice, and that it was made by an attorney in his or her capacity as such.

Plaintiff's argument is not persuasive in view of Squire's Affidavit and deposition testimony regarding the notes. (*See generally* Squire Aff.; ECF No. 53, Def.'s Reply, Ex. D, Deposition of David Squire.) Squire states that he contacted Baker on March 10, 2014 in order to

discuss "the associated legal risks" that might arise from the discipline or termination of Plaintiff. (Squire Aff. ¶¶ 2-4.) This is consistent with Squire's deposition testimony confirming some of the notes that he had made based on his conversation with Baker about Plaintiff's potential termination, including references to the question of whether Defendant would be "inviting a challenge" and the question of whether something (presumably the challenge) would "survive scrutiny." (Squire Dep. 127:1-128:25.) Squire also testified that the notes contain the substance of the phrase "[don't] treat her differently," and a reference to "testimony." (*Id.*)

Even putting the explanation in Squire's Affidavit aside, these words, written down during a conversation with Defendant's in-house counsel 10 days before the meeting at which Plaintiff was terminated, are enough on their face to require a clear inference that the conversation involved the seeking of legal advice, and that Baker was therefore acting in her capacity as an attorney. The Court finds that Defendant has made the showing required to invoke the attorney-client privilege in these circumstances.

**B.    Did Defendant waive privilege as to the notes?**

Plaintiff correctly points out that this Court has adopted what is referred to as the "intermediate approach" taken by federal courts in determining whether a disclosure of privileged information was inadvertent enough to preclude a finding that the privilege was waived. Under that approach, the court considers five factors: "1) the reasonableness of precaution taken in view of the extent of document production; 2) the number of inadvertent disclosures; 3) the magnitude of the disclosure; 4) any measures taken to mitigate the damage of the disclosures; and 5) the overriding interests of justice." *Grace Community Church v. Lenox Township*, 2007 WL 2534179, at *4 (E.D. Mich. 2007) (Borman, J.) (citing *Fox v. Massey–Ferguson*, 172 F.R.D. 653, 671 (E.D.

Mich. 1995). But contrary to Plaintiff's argument, an application of this test weighs in favor of finding that Defendant did not waive privilege as to the notes.

Neither party has offered any evidence of precautions taken to avoid disclosure of privileged documents, so the first factor discussed in *Grace Community Church* is neutral.

Factors two and three—the number of inadvertent disclosures and their magnitude—weigh in Defendant's favor. Plaintiff highlights the fact that the notes were produced as part of a production of 873 pages, and states that it was not as if "the alleged privileged material was part of some huge document production." (ECF No. 51 at 13.) That may be the case, but Defendant has produced over 5,000 pages of documents in the course of discovery overall (*See* ECF No. 53 at 5); even in the context of 873 pages, two pages of notes does not amount to much. *See Nilavar v. Mercy Health Systems-Western Ohio*, 2004 WL 5345311, at *5 (S.D. Ohio 2004) ("Even given the relatively small size of the overall production at stake here ('several inches'), a disclosure that amounts to, at most, little more than a page of hand-written material, cannot be viewed as anything other than minuscule.").

As to the remedial measures contemplated in the fourth factor, Plaintiff highlights the length of time between the disclosure (October 2015) and Defendant's first claim of privilege (this Motion, filed in November 2016). This is a substantial length of time, and it is indeed distinguishable from the situation in *Grace Community Church*, in which the document at issue "was not in Plaintiff's possession for very long, and upon realizing the inadvertent disclosure, Defendant promptly retrieved the documents." *Grace Community Church*, 2007 WL 2534179, at *5. On the other hand, Defendant argues that its privilege claim in this Motion was not untimely, as it was filed "[u]pon learning that Plaintiff's counsel was trying to use this privileged document as

substantive evidence" at the summary judgment stage. (ECF No. 53 at 8.) There is support in Sixth Circuit case law for the proposition that a delay for this reason does not amount to a privilege waiver. *See Quinn v. Griffith*, 515 F. App'x 543, 550 (6th Cir. 2013) (upholding the district court's decision to strike privileged documents where the documents were disclosed during discovery but the plaintiff moved to strike them after "Defendants made known their intent to present the emails at trial"). Moreover, the Court's Stipulated Protective Order issued on October 15, 2015 (ECF No. 17) provides that a party's inadvertent disclosure of privileged materials "shall not be construed to be a waiver, in whole or in part, of that party's claim to privilege." (*Id.* at ¶ 7.) It would not have been unreasonable for Defendant to rely on this in deciding not to seek the return of inadvertently disclosed privileged information that had been analyzed at deposition, but later to seek to exclude that same information from substantive evidence. *See Rainer v. Union Carbide Corp.*, 402 F.3d 608, 625 (6th Cir. 2005) (rejecting an argument that an inadvertent disclosure constituted an implicit waiver where the parties had agreed in a protective order that accidental production would not effect a waiver of privilege), *opinion amended on reh'g* (Mar. 25, 2005).

Plaintiff bootstraps her crime/fraud exception argument onto the fifth factor, arguing that finding a waiver of privilege would serve the interests of justice because the notes were made in furtherance of a fraudulent scheme to cover up the reason for Plaintiff's termination. (*See* ECF No. 51 at 16.) This is unpersuasive for the reasons that Plaintiff's crime/fraud argument is unpersuasive generally. It could just as convincingly be argued that the interests of justice are best served by protecting the notes as privileged, since this would further the general principle of "encourag[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United*

6

*States*, 449 U.S. 383, 389 (1981).

Courts tend to take a narrow view of implied waiver of attorney-client privilege generally, since "[a] broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). With this in mind, the Court finds that the "intermediate test" employed in *Grace Community Church* weighs in favor of Defendant.

**C.    Does the crime/fraud exception apply?**

The crime/fraud exception to the attorney-client privilege has two requirements: "a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege . . . [and the establishment of] some relationship between the communication at issue and the prima facie violation." *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir.1986)).

Plaintiff argues that the crime/fraud exception applies here because Squire's notes on their face demonstrate a concerted effort by Squire and Baker to develop factual scenarios surrounding Plaintiff's termination that were untrue, and that they would later contradict both in Defendant's response to Plaintiff's EEOC charge and in deposition testimony. (*See* ECF No. 51 at 17-20.)

This argument borders on the frivolous. First, the Sixth Circuit noted in 2005 that "[w]e have found no case law relating to private citizens seeking to claim the crime-fraud exception as a basis to keep privileged information." *Rainer*, 402 F.3d at 625. Notably, *Collis*, the only case cited by Plaintiff in support of her crime/fraud exception argument (and also quoted above), itself arose from a federal criminal prosecution; the movant seeking application of the crime/fraud exception

was the United States. *See Collis*, 402 F.3d at 321 ("In this case, the government was able to make a prima facie showing that a serious crime or fraud occurred.").

Even assuming that the crime/fraud exception can be invoked by a private party, Plaintiff's reliance on nothing outside of her interpretation of the notes makes her argument circular, particularly given Squire's characterization of the notes in his Affidavit as reflecting a conversation in which he sought Baker's analysis of potential legal risks that could arise from terminating Plaintiff. Without some plausible indication of fraud outside of the notes themselves, Plaintiff's argument is conjecture. *See Rainer*, 402 F.3d at 625 (finding it significant that the party seeking to invoke the crime/fraud exception had "fail[ed] to cite any facts" supporting its argument that the document at issue exposed an act of fraud). It is likely in order to forestall such conjecture that a court in this District has held that the two showings required to invoke the crime/fraud exception "must be made without reference to the allegedly privileged material." *State Farm Mut. Auto. Ins. Co. v. Hawkins*, 2010 WL 2287454, at *5 (E.D. Mich. 2010). The Court finds that the crime/fraud exception does not apply here.

### III.    CONCLUSION

For all the reasons above, the Court GRANTS Defendant's Motion, holding that Defendant is entitled to the return of the notes, and that the notes are inadmissible as privileged materials.

IT IS SO ORDERED.


s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: February 1, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 1, 2017.

s/D. Tofil<br>
Deborah Tofil, Case Manager